Filed 1/27/21  In re Ronnie M. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re RONNIE M., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>Y.R. et al.,<br><br>    Defendants and Appellants. | G059335<br><br>(Super. Ct. No. 19DP0443)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Anthony C. Ufland, Judge.  Affirmed.

Pamela Rae Tripp, under appointment by the Court of Appeal, for Defendant and Appellant Y.R.

Liana Serobian, under appointment by the Court of Appeal, for Defendant and Appellant M.M.

Leon J. Page, County Counsel, Karen L. Christensen and Aurelio Torre, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for the Minor.

\*        \*        \*

Y.R. (the mother) and M.M. (the father) appeal from the denial of a petition pursuant to Welfare and Institutions Code section 388[1] requesting reunification services with the child, Ronnie M. (Ronnie or the child). The mother[2] asserts the steps she took to continue drug treatment after services were terminated required the juvenile court to grant her petition to return Ronnie to her care or permit further services. We find no abuse of the court's discretion in denying the petition. While the steps the mother took were laudatory and commendable, the court's decision that they did not sufficiently reflect changed circumstances was well within its discretion. Accordingly, we affirm the order.

I

FACTS

Ronnie was born in April 2019. Shortly thereafter, the Orange County Social Services Agency (SSA) filed a petition pursuant to section 300. The petition alleged both Ronnie and the mother tested positive for amphetamines and methamphetamines at the time of the child's birth. The grounds for the petition were failure to protect (§ 300, subd. (b)), based on the mother and the father's unresolved substance abuse problems, the mother's possible untreated mental health conditions, and the criminal history of both parents. Ronnie, according to the hospital, was suffering from some withdrawal symptoms, including rapid heartbeat and breathing.

At the detention hearing, the parents denied the petition's allegations. The court, however, found the petition was supported by prima facie evidence and detained Ronnie pursuant to section 300, ordering further services and visitation. Thereafter, the child was placed in the home of the maternal grandmother and aunt.

---

[1] Subsequent statutory references are to the Welfare and Institutions Code.

[2] The father joins the mother's arguments, but does not offer any independent arguments as to why the court's order should be reversed. We therefore focus primarily on the mother.

At the jurisdiction/disposition hearing, the parents waived their right to trial and submitted on the social worker's reports. Those reports provided evidence of unresolved substance abuse issues for both parents, an active misdemeanor arrest warrant for the mother, and possible mental health issues for both parents. The mother stated that prior to learning of her pregnancy, she drank alcohol socially, smoked cigarettes, and used marijuana on occasion. She admitted to using methamphetamine twice in high school, but claimed she did not like it. Once she learned of her pregnancy, she stated "she stopped everything."

With respect to substance abuse prior to the birth, the mother admitted to using methamphetamine once, which she said she regretted. The mother stated her choice to use was based on frustration and conflict with both her own mother and the child's father. She denied ongoing drug or alcohol issues and claimed she did not need treatment. The mother said she had made a terrible mistake and wanted to remedy the situation, and she wanted Ronnie to join her at home.

Although mother had been briefly living with the father in a rented room prior to the child's birth, her plan was to return to the home of her mother and her aunt. The mother admitted "she has a tendency to minimize and deny as a way to cope and understands that although she may not agree with the Social Services Agency's concerns of continued drug use, she needs to cooperate and do what is being asked of her."

Other than the outstanding warrant, the mother had a criminal history consisting of a minor misdemeanor offense, while the father had a lengthy criminal history including felony offenses.

The social worker consulted a medical expert, who stated that based on the mother's claim of using methamphetamine one time, the child should not have been experiencing withdrawal symptoms after birth. By the time of the jurisdiction/disposition hearing, he was doing well in the care of the maternal grandmother.

SSA prepared a plan of services for the mother which included outpatient treatment, random drug testing, self-help meetings, parent education, and individual counseling. The mother was immediately referred for drug testing, but did not participate during the first several weeks. When the social worker asked her why, the mother "admitted she had not called because she does not agree with the reasons for needing to test. The mother acknowledged she has a tendency to be defiant when she does not agree with something she is being forced to do." She nonetheless agreed that "she was doing herself and the child a disservice by refusing to comply."

The mother was visiting the child during this period without incident. She understood that during dependency, she could not reside in the maternal grandmother's home, but at a team meeting, she expressed "a great deal of negative emotion" about it. The mother had also been trying to clear her misdemeanor warrant, but it was unclear if she had been successful.

After the jurisdiction/disposition hearing, the court declared Ronnie a dependent pursuant to section 300, subdivision (b)(1), removed him from the parents' custody, and ordered SSA's recommended services and supervised visits for the parents.

During the period between the jurisdiction/disposition hearing and the six-month review, the child remained in the custody of the maternal grandmother and aunt. SSA observed the child was thriving, and appeared to be at ease in the maternal grandmother's presence and in her home.

The mother and father were living together in a rented room, and the mother stated she was unemployed and looking for a job. The father and the maternal grandmother reported the mother had contact with law enforcement about five times in the month prior to SSA's six-month review report. On one occasion, law enforcement and an SSA representative were called due to the mother's erratic behavior. The mother admitted she was actively using methamphetamine, and her behavior was due to the drug

4

use and not mental health issues. SSA recommended a program, but the mother refused. On another occasion, she apparently spent at least one night in jail.

While the mother's opening brief states her participation with the case plan was "moderate," SSA described the mother's cooperation with the case plan and progress toward alleviating or mitigating the causes necessitating court involvement as "none." (Capitalization omitted.) The only part of her plan she completed was a 14-hour parenting class. While she took an initial step toward participation in a parent mentor program, she did not follow through when a change of mentor was necessary due to conflict between the mother and the father. That service was terminated by the provider due to the mother's arrest and lack of compliance.

Counseling services were initially terminated due to lack of participation. After SSA had the services reinstated, the mother refused to sign the necessary documents, stating "she knew her rights." A final attempt at counseling with a different provider failed when the counselor reported she was never able to see the client, and the mother had refused to sign the counselor's welcome letter.

With regard to substance abuse testing, SSA reported: "From May 14, 2019 through October 30, 2019, the results yielded that the mother has had to test a total of 29 times for a standard panel test and 29 for blood alcohol levels. Of those tests, the mother has tested negative a total of two times for a standard panel test and five for blood alcohol levels. Of the 29 times she has been asked to test, she has not shown for 24 total tests, refused to test twice and tested positive . . . ." Her call-in compliance from May through October 2019 was 70 percent, but in the month prior to the report, September 30 to October 30, it was zero percent.

When asked about the positive result, "[t]he mother explained that she had not taken any drugs including methamphetamine and asked if this could have been due to having sexual relations with the father who she believed was actively using." The social worker explained this was not possible, but the mother continued to deny drug use.

5

When asked about her missed tests, on multiple occasions, the mother had stated SSA "is making her out to look like a drug addict and she is not." She was reminded that a missed test was considered a positive test.

The mother was repeatedly offered outpatient substance abuse services but continually refused, stating "she needed to do one service at a time and would start this type of service eventually." She was also offered resources regarding self-help meetings, but had produced no proof of attendance.

SSA attempted to hold a meeting to address the lack of participation in services. The mother refused to participate because the people she had requested to be present were not there, including a long list of previous social workers, SSA administrators, and employees from the hospital where the child had been born. SSA explained she could bring anyone she wished to the meeting, but SSA had no control over who would actually appear. Another meeting was scheduled a month later, and again the mother failed to appear, claiming first she believed a meeting for her (as opposed to the father) was scheduled at another time. She then declined to attend because the meeting did not include all of the people she believed needed to be in attendance.

The mother did visit the child consistently during this period, except for the month prior to SSA's report, when she often cancelled. She was generally able to care for the child and meet his needs during visits. The maternal grandmother, however, expressed concern about the mother's erratic behavior. She was sufficiently concerned that visits were moved to SSA so that others could observe the mother's behavior. During some visits, the mother had to be asked not to interfere in other people's visits and to "calm down." Other families made complaints about her disruptive behavior.

The social worker noted it was difficult to have a conversation with the mother about her perception of the family's needs. The mother would frequently become upset and discuss unrelated topics.

Based on the overall lack of case plan compliance and progress toward remediating the problems that had led to dependency, SSA recommended terminating services without returning custody to the parents.

Shortly before the six-month review hearing, SSA learned the mother had been placed on a section 5150 hold "due to being a danger to others, '"as she was beating on her sister and her mother."'" Her drug screen while in the hospital was positive for methamphetamines. The mother denied any drug use.

At the six-month review hearing, the court terminated services and set the matter for a permanency planning hearing (§ 366.26; the .26 hearing). The hearing was initially set for May 2020 and continued to July pursuant to emergency rules adopted during the COVID-19 pandemic. The maternal grandmother had been identified as a prospective adoptive parent, and she had completed the necessary clearances.

While the .26 hearing was pending, the mother filed a petition pursuant to section 388. Both the motion and the social worker's reports reflected that numerous changes had taken place. In May 2020, according to the maternal aunt, the mother had entered a 14-day detox inpatient facility. Thereafter, the mother had admitted herself to a residential treatment program and had been there for over two months at the time she filed the section 388 petition. Her declaration in support of the petition stated that she attended individual therapy, group therapy, participated in random testing, and case management. The mother stated in a declaration that she planned to complete the 90-day inpatient program in August and transition to an outpatient sober living program while continuing to attend treatment and 12-step meetings. She also stated she planned to return to school to learn phlebotomy and find suitable employment.

According to the mother, treatment had taught her life skills and she was working persistently with her therapist. She had taken anger management classes, and learned relapse prevention coping skills. Her petition was supported by documentation from her treatment program, including negative drug tests.

SSA's recommendation, however, did not change. SSA was aware the mother had sought impatient treatment. The maternal grandmother told the social worker that she was concerned the mother would only be "able to maintain her sobriety while in the current inpatient facility. She is concerned the mother has reported to her that as soon as she would finish her current program, she would leave the facility. The maternal grandmother believes due to the mother's history of not being able to maintain her sobriety in the past, she may easily relapse."

The court found the mother had presented sufficient evidence for a prima facie case and set a hearing on the motion for the same time as the .26 hearing. At the hearing, the mother testified that she finally decided to enter treatment in May after losing her car, being homeless, and fearing losing her son for good. She entered an impatient program, but left, believing she did not need it, and relapsed. She would use methamphetamine when depressed or upset but did not believe she had a problem. Cross-examination revealed she was unclear as to how many times she had relapsed.

At the time of the hearing, the mother was on medication for a mental health condition. She described how her various classes and treatment had benefitted her, and she had a plan to complete residential treatment and go to sober living or move in with a family member. She was not able to financially care for a child at that time, but stated her mother would help her until she got on her feet. The mother's case manager also testified about the progress that she had made in the program. She stated the mother was 100 percent in compliance with all the terms of her program. The social worker and father also testified.

After a fully contested hearing, the court denied the mother's petition. Unlike her statements during her drug program, the court noted the mother had denied drug use throughout the pendency of the case. While her participation in treatment was progress, it did not sufficiently meet the criteria of changed circumstances.

8

Subsequently, after making the appropriate findings, the court terminated parental rights and freed Ronnie for adoption. The parents now appeal.

## II

## DISCUSSION

The only issue in this appeal is whether the court erred by failing to grant the mother's section 388 petition after a hearing on the merits. We review such a determination for abuse of discretion.

"We must uphold the juvenile court's denial of appellant's section 388 petition unless we can determine from the record that its decisions '"exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court."'" (*In re Brittany K.* (2005) 127 Cal.App.4th 1497, 1505.)

In pertinent part, section 388, subdivision (a)(1), provides: "Any parent or other person having an interest in a child who is a dependent child of the juvenile court . . . may, upon grounds of change of circumstance or new evidence, petition the court . . . for a hearing to change, modify, or set aside any order [the] court previously made . . . ." If the petitioning party presents a prima facie case that the statute applies, a hearing is granted. That party "must also show that the proposed change would promote the best interests of the child." (*In re J.C.* (2014) 226 Cal.App.4th 503, 525.) After reunification services have been terminated, a child's best interests with respect to a section 388 petition includes the child's need for "'permanency and stability.'" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.) The request for a modification, as the mother correctly states, must be viewed in the context of the entire dependency proceeding. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 307.)

The mother emphasizes that she was only permitted six months of services. But she omits the reason for this – during that time, with the exception of completing one

class, she did almost nothing to comply with her case plan. She had missed a large number of tests, and when she tested positive, continued to deny drug use. Indeed, throughout the pendency of the case until the final hearing, she continued to be dishonest with the social workers and the court about her drug use.

The mother cites *In re A.A.* (2012) 203 Cal.App.4th 597, 612, in support of the juvenile court taking a balancing approach to whether changed circumstance exist, considering: "(1) the seriousness of the problem which led to the dependency, and the reason for any continuation of that problem; (2) the strength of relative bonds between the dependent children to both parent and caretakers; and (3) the degree to which the problem may be easily removed or ameliorated, and the degree to which it actually has been."

But this test does not help the mother, particularly given the standard of review on appeal. The problem which led to dependency was, as the mother finally admitted, both real and serious, requiring her to hit "rock bottom" before beginning to seek help. The evidence demonstrated strong bonds between Ronnie and the maternal grandmother, and he was thriving in her care with the benefit of a stable home. The mother was generally able to provide for the child's needs during visits, but this does not show the kind of strong, loving, parental bond that would truly strengthen her argument. Ronnie has lived with his maternal grandmother for nearly his entire life; his mother, to him, is a visitor. She may be a welcome visitor, but she is not his primary caregiver and has never occupied that role.

Further, the degree to which the mother's problem could be "easily removed or ameliorated" was nonexistent, as the history of this case shows. And finally, the evidence demonstrated the mother had only taken the first steps in sobriety. Maintaining sobriety for a few months while in a heavily structured treatment program is laudable, and not easy. But it is nonetheless far easier than maintaining sobriety once released, living on one's own, responsible for both oneself and a small child. Indeed,

10

these factors weigh heavily against the mother and any finding of truly changed circumstances.

A brief period of sobriety is rarely sufficient to establish changed circumstances. (*In re Casey D.* (1999) 70 Cal.App.4th 38, 48-49; *In re Cliffton B.* (2000) 81 Cal.App.4th 415, 423.) The mother seemingly attempts to have it both ways in her effort to distinguish *Cliffton B.*, claiming she had a short "confirmed addiction history." But this, again, minimizes the problem. The mother's own testimony supports drug use dating back a decade and her refusal to accept that she had any issue at all with substance abuse until three months before the final hearing in this matter. When a parent "has a history of drug relapses, is in the early stages of recovery, and is still addressing a chronic substance abuse problem," even the "completion of a drug treatment program, at this late a date, though commendable, is not a substantial change of circumstances." (*In re Ernesto R.* (2014) 230 Cal.App.4th 219, 223.) Here, the mother has not completed her program. She has barely begun it, and she has yet to demonstrate that she can maintain sobriety outside the rigid structure of a residential program.

Given the complete context of this case, the juvenile court did not abuse its discretion by failing to grant the mother's section 388 petition. The steps she took were necessary but not sufficient. The mother simply did not offer evidence of a change of circumstances that would justify a modification, and the court did not abuse its discretion in reaching that conclusion.

## III

## DISPOSITION

The order is affirmed.


MOORE, ACTING P. J.

WE CONCUR:


FYBEL, J.


GOETHALS, J.